DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jacyn Kachele, | ) | |
| | ) | CASE NO. 1:05 CV 1579 |
| Plaintiff, | ) | CASE NO. 1:04 CR 137 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  Introduction

This case is brought by the petitioner in a *pro se* capacity seeking habeas relief from her sentence to a term of imprisonment of 30 months imposed by now retired Judge Paul Matia.  As a consequence of Judge Matia's retirement, this case was referred to this branch of the court and the Court requested a Report and Recommendation from the assigned Magistrate Judge Patricia Hemann.  The Report recommends a denial of relief under the provisions of 28 U.S.C. § 2255.

The Court has been the recipient of numerous letters from the petitioner in which she complains about her treatment in the place of her incarceration and her complaints appear to have validity in the context of the denial of services.  Against that background, the Court has requested, in addition to Magistrate Judge Hemann's Report and Recommendation, copies of the transcripts of the hearings in which the petitioner both pled guilty and was sentenced, as well as a copy of the presentence report.

## II.   The Criminal Charge Contained in the Information

(1:05 CV 1579 & 1:04 CR 137)

The Information is summarized in the Pre-sentence Report as follows:

Count I

From on or about May 12, 2002, through on or about November 20, 2003, the defendant, Jacyn Kachele, did knowingly execute and attempt to execute a scheme and artifice to defraud Key Bank and Fifth Third Bank, and to obtain monies, funds, credits, assets, securities and other property owned by and under the custody and control of said financial institutions, by means of false and fraudulent pretenses, representations, and promises.

In furtherance of this scheme and artifice, from on or about May 12, 2002, through on or about November 20, 2003, Jacyn Kachele prepared about 95 checks payable to herself totaling approximately $426,150.00 and, without the knowledge or authorization of her employer, Wald & Fisher, forged the signature of her supervisor.  Subsequently, in order to effect the scheme and artifice to defraud, Jacyn Kachele then deposited most of these checks into accounts she maintained at Fifth Third Bank, thereby falsely representing that she was lawfully entitled to said funds.  As a result of this fraudulent conduct by the defendant, Key Bank and Wald & Fisher were defrauded and sustained losses totaling approximately $426,150.00.  All in violation of 18 U.S.C. § 1344.

### III.   The Plea Agreement

The parties agreed that the final Offense Level would be 18, assuming the defendant continued to accept responsibility for her conduct.  The parties agreed that the offense level of 7 would be increased by 14 levels because the loss exceeded $400,000.

As indicated in the Report and Recommendation, Paragraph 14 of the Plea Agreement contained the following two relevant paragraphs:

Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 29 U.S.C. § 2255.  The Defendant expressly waives those rights, except as reserved below.  The Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitute an upward departure from the Sentencing

2

(1:05 CV 1579 & 1:04 CR 137)

Guideline range agreed to by the parties herein. Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

**Agreement Not to Seek Departures.** The parties agree that there are no bases for either an upward or downward departure from the Sentencing Guidelines and, with one exception, the parties agreed not to seek any such departure. The Defendant reserves the right to seek a downward departure based on medical or psychological grounds. The USAO reserves its right to oppose that departure.

### IV. The Sentencing Hearing

A review of the sentencing hearing transcript indicates that the defendant, having reserved the right to seek a downward departure based on medical or psychological grounds, made no such motion for a downward departure at the time of sentencing which was in a pre-*Booker* setting.

### V. The Petitioner's Basis for Habeas Relief

The Report and Recommendation states in relevant part:

"Although Kachele reserved the right to seek a downward departure based on medical or psychological grounds, such a departure should have been sought prior to or at the time of sentencing. Having waived the right to attack her sentence collaterally pursuant to § 2255 except in limited circumstances, Kachele is now barred from seeking such relief."

In response to that conclusion, the petitioner now declares:

In the Plea Agreement, (Paragraph 18) the Defendant reserved her right to seek downward departure based on medical and psychological grounds. At the time of sentencing the psychological report was not presented to the court as the defendant coulnt (sic) pay the doctors fee. The testing was performed. But payment was due before the report would be released. The Pre-Sentence Investigative Officer Mr. Art Bowker, himself called said doctors office in an attempt to get the report. At Federal Prison Camp Alderson, another such

3

(1:05 CV 1579 & 1:04 CR 137)

>evaluation was done and it is those findings along with the Defendant's medical "chronic health care" issues that are before this court now. This is the first they have been made available to submitt (sic) before the court.
>
>It is respectfully submitted that the Defendant has clearly shown, by the evidence submitted, that she was indeed suffering from a mental condition "Diminished Capacity" at the time of her commission of the crime, which significantly reduced her mental capacity and which contributed to the commission of the offense. This is precisly what § 5K2.13 was designed to address.

## VI. The Court's Ruling

The only explanation offered for the petitioner's failure to proceed with the reserved right to move for a downward departure based on "medical or psychological grounds" is the unavailability of money to pay for doctor's fee. However, no claim is made that payment would have produced a report to support the motion for a downward departure. No claim is made that the petitioner was denied the effective assistance of counsel.

As a consequence, the Court finds that the petitioner did waive her right to move for a downward departure, and as no claim is made that the petitioner was denied the effective assistance of counsel, the Court accepts the Report of Magistrate Judge Hemann and adopts the Recommendation.

By a separate judgment entry the Court will deny the petitioner's motion for a re-sentencing and will also find that there is no reasonable basis to grant the petitioner a Certificate

4

(1:05 CV 1579 & 1:04 CR 137)

of Appealability.

    IT IS SO ORDERED.

| | |
|---|---|
| December 8, 2005 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |